**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **SONYA OWENS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 08-2029 (ESH)** |
| | ) | |
| **DISTRICT OF COLUMBIA,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Sonya Owens, proceeding *pro se*, has filed an amended complaint alleging that

the District of Columbia, Office of the Corporation Counsel (now referred to as the Office of the

Attorney General of the District of Columbia ("OAG")), and Mayor Adrian Fenty, in his official

capacity, engaged in unlawful employment discrimination and retaliation, defamation, and

deprivation of civil rights in violation of a variety of federal statutes, as well as the District of

Columbia Comprehensive Merit Personnel Act ("CMPA"), D.C. Code 1-601.1 *et seq.*  Plaintiff

seeks both monetary damages and equitable relief, including reinstatement.  Plaintiff's

allegations against these same defendants formed the basis of an earlier complaint that she filed

in this Court, with the assistance of counsel, alleging discrimination on the basis of race and

gender, as well as unlawful retaliation.  *See Owens v. District of Columbia* ("*Owens I*"), No. 05-

CV-1729 (D.D.C. filed Aug. 31, 2005).  That civil action came before Magistrate Judge Alan

Kay, went to trial, and resulted in a jury verdict for defendants.  *See* Clerk's Judgment, *Owens I*,

No. 05-CV-1729 (D.D.C. Jan. 24, 2008).  Defendants have filed a motion to dismiss the

amended complaint for failure to state a claim upon which relief can be granted.  For the reasons

set forth below, defendant's motion will be granted in part and denied in part.

**BACKGROUND**

I.      **FACTUAL BACKGROUND**

The facts, as alleged in the amended complaint and established through exhibits and other

court documents, are as follows:

Plaintiff was a captain with the District of Columbia Metropolitan Police Department

("MPD").  (Am. Compl. ["Compl."] [Dkt. No. 12]  ¶ 4.)  In June 2001, plaintiff was interviewed

by the Equal Employment Opportunity Commission ("EEOC") as a witness during the

investigation of gender and pregnancy discrimination complaints filed by two other officers

against a MPD district commander.  (*Id.* ¶ 6.)  During the course of that investigation, plaintiff

stated that the two officers had been subject to "disparate inequitable treatment."  (*Id.* ¶ 7.)  In

July 2004, the MPD learned that the two officers had filed a federal discrimination lawsuit, and

in November, the MPD learned that plaintiff had been summoned as a witness in that suit.  (*Id.*

¶¶ 16, 18.)  Subsequently, plaintiff's "police powers were revoked," "her access to the general

public was restricted," her "duty assignments and responsibilities were removed without being

told beforehand," and she received a notice of proposed suspension "for 'overdue

correspondence.'"  (*Id.* ¶¶ 19-20.)  In February 2005, plaintiff testified in the discrimination

lawsuit.  (*See id.* ¶¶ 21-26.)  MPD then informed her that she would be suspended as previously

notified.  (*Id.* ¶ 27.)

In March 2005, plaintiff was interviewed by Internal Affairs regarding a citizen

complaint filed by the State of Virginia Arlington County Animal Welfare Shelter ("AAS").

(Compl. ¶¶ 28-33.)  Plaintiff, having apparently viewed this interview as a custodial

interrogation, "invoked her civil rights . . . ."  (*Id.* ¶ 32.)  That same month, following this

interview, the MPD "revoked all of [plaintiff's] official duties," referred her to the Office of

Professional Responsibility for follow-up questioning on the AAS matter (for which plaintiff

sought legal advice and counsel), and suspended her for two weeks for "overdue

correspondence." (*Id.* ¶¶ 34-48.) Plaintiff appealed her suspension to the Office of Employee

Appeals ("OEA"). (*Id.* ¶ 49.)

In April 2005, plaintiff was again suspended for twelve days for being absent without

leave ("AWOL") for 80 hours during her previous suspension. (Compl. ¶ 58.) She therefore

supplemented her pending OEA appeal to cover this second suspension. (*Id.* ¶ 60.) In May

plaintiff received a notice of proposed termination from the MPD for, among other things, being

involved in criminal activity. (*Id.* ¶ 61.) In response, she requested copies of all documents and

information relevant to the MPD's "investigation(s)" (presumably relating to the claim of her

involvement with criminal activity), although she did not receive anything in response to that

request. (*Id.* ¶¶ 62, 64.) In August, after she filed a Notice of Intent to sue the District, the MPD

conducted a termination hearing and, shortly before the hearing, provided her with some of the

information she had previously requested. (*Id.* ¶¶ 65-67.) Plaintiff requested a continuance of

the hearing so that she could review the information she had been given, and the continuance

was granted, although she was not notified of this. (*Id.* ¶¶ 68-69.)

On August 31, 2005, plaintiff filed *Owens I* alleging discrimination and retaliation under

42 U.S.C. § 1981 and three provisions of the D.C. Human Rights Act ("DCHRA"), D.C. Code §

2-1402.11 and § 2-1402.61(a) & (c). (*See* Defs.' Mot. to Dismiss Amended Compl. ["Mot."]

[Dkt. No. 14], Ex. 1 (*Owens I* complaint) at 15-19.) Shortly thereafter, the MPD resumed

plaintiff's termination hearing without notifying her and included several additional charges.

(Compl. ¶¶ 71-72.) In October 2005, the MPD notified plaintiff that it had decided to terminate

her employment as of November. (*Id.* ¶ 73.) In December, plaintiff appealed her termination to

the OEA.  (*Id.* ¶ 74.)

In July 2006, an OEA administrative law judge ("ALJ") dismissed plaintiff's appeal of her suspension.  (Compl. ¶ 75.)  In August, plaintiff filed a petition seeking review of that dismissal by the Board of the OEA ("the Board").  (*Id.* ¶ 76.)   In September, the OEA also ordered MPD to provide plaintiff with transcripts of her termination hearings, and in October, the OEA conducted a hearing on plaintiff's termination appeal.  (*Id.* ¶¶ 77-78.)  A year later, in November 2007, an OEA ALJ upheld the termination.  (*Id.* ¶ 79.)  In December plaintiff filed a petition for review of her termination with the Board.  (*Id.* ¶ 80.)

*Owens I* went to trial in January 2008, with Magistrate Judge Alan Kay presiding. Plaintiff contends that during trial, witnesses for the MPD and the AAS testified that the AAS did not, in fact, file a citizen complaint regarding plaintiff, and that MPD witnesses also testified about how, among other things, the MPD "had conducted 'an ongoing criminal investigation that never stopped'" since November 2004.  (Compl. ¶¶ 81-87.)  On January 22, the jury found for the defendants, concluding that plaintiff had failed to prove that defendants had retaliated or discriminated against her.  (Mot., Ex. 2 (*Owens I* jury verdict form) at 1-2.)  The judgment in *Owens I* was entered two days later.  (*See id.*, Ex. 3 (*Owens I* judgment).)  No appeal was taken from this judgment.

On April 9, 2008, plaintiff filed a petition for review with the District of Columbia Court of Appeals that "raise[d] the issues in this suit" and sought review of the OEA ALJ's decisions. (Pl.'s Opp'n to Mot. to Dismiss ("2nd Opp'n")[1] [Dkt. No. 17] at 3; *see id.* at 7 (Court of Appeals order).)  However, on May 7, 2008, the Court of Appeals dismissed the petition for lack of

---

[1] This opposition brief does not contain all of plaintiff's arguments.  She also filed a separate opposition entitled "Plaintiff's Opposition to the Defendant's [*sic*] Motion to Amend Parties" ("1st Opp'n").  [Dkt. No. 16.]

jurisdiction. (*Id.*, Ex. 1 at 7.)  The court explained that because plaintiff's petitions for review were also still pending with the OEA Board, no appealable final administrative order had been issued. (*Id.* at 3.)  The dismissal was without prejudice to plaintiff "filing a petition for review once a final order has issued." (*Id.*)

On May 12, 2008, plaintiff moved to withdraw her two petitions for review that were pending before the OEA Board. (Compl., Ex. 1 at 5-7.)  On July 24, the Board granted plaintiff's motion, dismissed both appeals, and served plaintiff with notice. (Compl. ¶ 87 & Ex. 1 at 2, 4.)  The Board's order of dismissal noted that the ALJ's initial decisions would become the OEA's "final decision[s]" after five days – *i.e.*, on or about August 1, 2008 – and that once plaintiff received formal notice of the final decisions, she would have 30 days to take an appeal to the Superior Court of the District of Columbia. (Compl., Ex. 1 at 3.)  Subsequently, plaintiff appears to have filed another petition with the Court of Appeals, because on September 25, the court "dismiss[ed] her petition as [she] is not aggrieved . . . ." (2nd Opp'n at 7 (Court of Appeals order).)  Plaintiff moved for reconsideration but the Court of Appeals denied that motion on October 10, noting that "petitioner has suffered no legal injury after the Office of Employee Appeals granted her motion to dismiss the petitions . . . ." (*Id.*)

## II.    THE INSTANT ACTION

On November 25, 2008, plaintiff initiated this action.  The amended complaint was filed on March 20, 2009.  Paragraphs 3 through 64 of the amended complaint recount factual allegations that were the gravamen of the complaint in *Owens I*.  However, paragraphs 65 through 87 of the amended complaint recount additional facts following the initiation of *Owens I*, pertaining to the administrative events leading up to and following her termination from the MPD.  The amended complaint presents seven counts.  Count One alleges that defendants

retaliated against plaintiff, in violation of 42 U.S.C. § 1983, because she engaged in the protected activity of supporting the two female officers against the MPD in their EEO proceedings and lawsuit. (Compl. ¶¶ 88-112.)  Count Two alleges that defendants retaliated against plaintiff in violation of the False Claims Act's whistleblower protections, 31 U.S.C. § 3730(h).  (*Id.* ¶¶ 113-120.)  Count Three alleges that defendants violated various provisions of the CMPA by, among other things, terminating her without cause and failing to follow a variety of personnel regulations in suspending her, firing her, and adjudicating her appeals of the suspensions and firing.  (*Id.* ¶¶ 121-131.)  Count Four alleges that defendants retaliated against plaintiff, in violation of 42 U.S.C. § 1981, by "conduct[ing] a hearing that terminated her employment" shortly after she initiated the *Owens I* lawsuit.  (*Id.* ¶¶ 133-134.)  Count Five alleges that defendants defamed plaintiff by making statements "so stigmatizing that they severely disqualify and [a]ffect her potential future employment . . . ."  (*Id.* ¶ 143.)  For example, plaintiff alleges that her personnel record "states that she was terminated because [defendants] convicted her of filing a false police report, engaging in criminal misconduct with conviction in a court of law, conduct unbecoming[,] and insubordination."  (*Id.* ¶ 142.)  Counts Six and Seven allege that defendants violated 18 U.S.C. §§ 241 and 242 by conspiring to deprive and actually depriving plaintiff of her constitutional rights by, among other things, the MPD's conduct during the investigation into the AAS complaint.  (*Id.* ¶¶ 149-161.)

## ANALYSIS

### I.    STANDARD OF REVIEW

"'When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.'"  *Atherton v. Dist. of Columbia Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. June 2, 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))

(edits omitted).  "'So long as the pleadings suggest a "plausible" scenario to show that the pleader is entitled to relief, a court may not dismiss.'"  *Id.* (quoting *Tooley v. Napolitano*, 556 F.3d 836, 839 (D.C. Cir. 2009) (edits omitted).  However,

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted).

"A *pro se* complaint," such as plaintiff's, "'must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Atherton*, 567 F.3d at 681 (quoting *Erickson*, 551 U.S. at 94).  "But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'"  *Id.* at 681-82 (quoting *Iqbal*, 129 S. Ct. at 1950).

## II.      AMENABILITY OF DEFENDANTS TO SUIT

Defendants correctly argue that because the OAG is a subordinate agency of the District of Columbia government, it may not be sued in its own name.  "[A] subordinate governmental agency may not sue or be sued in the absence of a statutory provision to that effect."  *Trifax Corp. v. Dist. of Columbia*, 53 F. Supp. 2d 20, 26 (D.D.C. 1999); *see Kundrat v. Dist. of Columbia*, 106 F. Supp. 2d 1, 5 (D.D.C. 2000) (citing cases).  Given the absence of any statutory authority enabling suits against the OAG in its own name, the OAG will be dismissed.  *See, e.g.*, *Doe v. Dist. of Columbia*, 609 F. Supp. 2d 38, 40-41 (D.D.C. 2009) (dismissing two District agencies as *non sui juris*).

7

Plaintiff has also sued Mayor Fenty in his official capacity only.  Defendants seek to dismiss the claims against the Mayor on the theory that "this suit is in reality a suit against the District . . . ."  (Mot. at 8.)  Defendants are correct "that a lawsuit against the Mayor acting in his official capacity is the same as a suit against the District.  However, even though retaining the Mayor as a party in the suit is redundant, there is no requirement that, because of the equivalence, the public official defendant must be dismissed.  Accordingly, the Court denies the motion to dismiss the claims against the Mayor in his official capacity." *Johnson v. Dist. of Columbia*, 572 F. Supp. 2d 94, 112 (D.D.C. 2008) (internal quotation marks and citation omitted); *see also Winder v. Erste*, No. 03-CV-2623, 2005 WL 736639, at *5 (D.D.C. Mar. 31, 2005) (declining to dismiss District official where plaintiff claimed unlawful retaliation in violation of 42 U.S.C. § 1983).

## III.    COUNT TWO

Count Two of the complaint alleges that defendants retaliated against plaintiff in violation of the False Claims Act, 31 U.S.C. § 3730(h).  Section 3730 permits private citizens to bring *qui tam* actions in the government's name for violations of § 3729, which defines the false claims prohibited under the Act.  *See* 31 U.S.C. §§ 3729 & 3730(b)(1).  Section 3730(h) only prohibits employers from retaliating against employees "because of lawful acts done by the employee . . . in furtherance of *other efforts to stop 1 or more violations of this subchapter*." *Id.* § 3730(h)(1) (emphasis added); *see generally id.* §§ 3721-3733 (subchapter provisions.  Because the complaint does not allege that plaintiff attempted to stop a false claim against the

government,[2] it does not contain "sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (internal quotation marks omitted).

Plaintiff has therefore failed to state a claim under § 3730(h), and Count Two shall be dismissed.

## IV.    COUNTS SIX AND SEVEN

Counts Six and Seven of the complaint allege that defendants violated 18 U.S.C. §§ 241

and 242.  These criminal statutes do not provide a private right of action.  *Crosby v. Catret*, 308

F. App'x 453, 453 (D.C. Cir. 2009) ("The district court properly rejected appellant's attempt to

invoke 18 U.S.C. § 241 and 18 U.S.C. § 242 to initiate a prosecution against the named

defendants because there is no private right of action under these criminal statutes."); *Johnson v.*

*D.C. Criminal Justice Act*, 305 F. App'x 662, 662 (D.C. Cir. 2008) (same).  For this reason,

Counts Six and Seven will be dismissed.

## V.    THE REMAINING COUNTS

Defendants have also moved to dismiss Counts One, Three, Four, and Five on grounds of

*res judicata* and to dismiss Count Five's defamation claim on statute of limitations grounds.  The

Court will address these arguments in turn.

### A.    Res Judicata

Defendants argue that plaintiff's lawsuit must be dismissed "[u]nder the doctrine of *res*

*judicata* and the closely related principle of claim preclusion," because this action involves the

same parties and arises out of the same set of operative facts as *Owens I*, which was concluded

with a final adjudication on the merits.  (Mot. at 9-10.)  "'Under the doctrine of res judicata, or

---

[2] A "claim" is defined as "any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(c).

claim preclusion, a subsequent lawsuit will be barred if there has been prior litigation (1)

involving the same claims or cause of action, (2) between the same parties or their privies, and

(3) there has been a final, valid judgment on the merits, (4) by a court of competent

jurisdiction.'" *Capitol Hill Group v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, No. 08-7109,

2009 WL 1812732, at *3 (D.C. Cir. June 26, 2009) (quoting *Smalls v. United States*, 471 F.3d

186, 192 (D.C. Cir. 2006)).  "[C]laim preclusion is [] intended to prevent litigation of matters

that *should have been* raised in an earlier suit."  *NRDC v. EPA*, 513 F.3d 257, 261 (D.C. Cir.

2008) (internal quotation marks omitted).  For this reason, "[r]es judicata bars relitigation not

only of matters determined in a previous litigation but also ones a party could have raised."

*Capitol Hill Group*, 2009 WL 1812732, at *5 (internal quotation marks, edits, and ellipsis

omitted).  In other words, "'claim preclusion precludes the litigation of *claims,* not just

*arguments*.'"  *Id.* at *4 (quoting *NRDC*, 513 F.3d at 261).

Plaintiff contends that the elements "necessary to trigger a 'res judicata' defense do not

exist."  (2nd Opp'n at 3.)  This is incorrect.[3]  It is clear that this action and *Owens I* involve the

same parties: plaintiff, the District of Columbia, and the Mayor.  It is also clear that the two

actions involve substantially the same claims or causes of action.  "[T]here is an identity of the

causes of action when the cases are based on the same nucleus of facts because it is the facts

surrounding the transaction or occurrence which operate to constitute the cause of action, not the

legal theory on which a litigant relies."  *Capitol Hill Group*, 2009 WL 1812732, at *4 (internal

quotation marks omitted).  Here, paragraphs 3 through 64 of the instant complaint are virtually

identical to allegations found in the *Owens I* complaint's statement of facts.  (*Compare* Compl.

¶¶ 3-64 *with* Mot., Ex. 1 ¶¶ 3-102.)  Therefore, the two actions share a common factual nucleus,

---

[3] The Court also rejects plaintiff's contention that defendants' *res judicata* argument is untimely.

and to the extent that plaintiff's claims are based upon the allegations that are duplicative of

those made in *Owens I*, plaintiff could have and should have brought those claims in *Owens I*.

*See, e.g.*, *Nader v. Democratic Nat'l Comm.*, 590 F. Supp. 2d 164, 170 (D.D.C. 2008) (finding

claims barred under *res judicata* where they were or could have been brought in previous civil

action).  Finally, the jury verdict in *Owens I* was a final and valid adjudication of the merits of

plaintiff's discrimination and retaliation claims, which were also the basis for the allegations

repeated in paragraphs 3 through 64 of the instant complaint.

Accordingly, plaintiff's remaining causes of action are barred to the extent that they arise

from facts alleged in paragraphs 3 through 64.  *See Moment v. Dist. of Columbia*, No. 05-CV-

2470, 2007 WL 861138, at *3-*4 (D.D.C. Mar. 20, 2007) (finding claims barred under *res

judicata* where plaintiff's instant allegations were identical to those made against same

defendants in previous action).  However, to the extent that plaintiff's claims are based upon

issues that were not and could not have been raised in *Owens I* – namely, those stemming from

her termination and her efforts to administratively appeal that termination[4] – they are not barred

by *res judicata*.

**B.      Statute of Limitations as to Defamation**

Defendants also move to dismiss plaintiff's defamation claim as time-barred.  "In the

District of Columbia, the statute of limitations for defamation is one year."  *Wallace v. Skadden,

Arps, Slate, Meagher & Flom*, 715 A.2d 873, 882 (D.C. 1998); *accord Savoy v. VMT Long Term

Care Mgmt. Co., Inc.*, 522 F. Supp. 2d 211, 213 (D.D.C. 2007) ("[Under D.C. law], any claim

for slander must be brought within one year from the time the action accrues . . . ."); *see* D.C.

---

[4] In *Owens I*, plaintiff did not amend her complaint to include any claims arising from the termination, nor did the Court's review of plaintiff's pleadings or the jury instructions in *Owens I* reveal that her termination was ever cited as a retaliatory action.

Code § 12-301(4).  "'Defamation occurs on publication, and the statute of limitations runs from the date of publication.'"  *Wallace*, 715 A.2d at 882 (quoting *Foretich v. Glamour*, 741 F. Supp. 247, 252 (D.D.C. 1990)); *accord Thomas v. News World Communications*, 681 F. Supp. 55, 73 (D.D.C. 1988) ("Libel actions [under D.C. law] accrue on the date of publication.").

Here, plaintiff's only remaining defamation claims relate to defendants' alleged statements relating to the reasons for her termination.  Such claims are subject to the CMPA's administrative exhaustion requirements.  *See Washington v. Dist. of Columbia*, 538 F. Supp. 2d 269, 278-80 (D.D.C. 2008) (concluding that supervisor's allegedly defamatory statements were sufficiently related to "personnel" issues and therefore "require[d] the exhaustion of CMPA remedies prior to filing suit").  It appears from the complaint that plaintiff indeed sought to exhaust her administrative remedies by taking an appeal to the OEA's ALJ and Board and receiving a final decision before pursuing judicial relief.  (*See* Compl. ¶¶ 74-80, 87 & Ex. 1.)  *Cf. Hoey v. Dist. of Columbia*, 540 F. Supp. 2d 218, 231 (D.D.C. 2008) (dismissing defamation claims for failure to exhaust because plaintiff "was first required by the CMPA to present them to OEA and obtain a Final Decision from that body before pursuing judicial relief").  Other judges of this Court have deemed it appropriate to equitably toll statutes of limitations under D.C. law where claimants first sought to exhaust their available administrative remedies.  *See Waldau v. Coughlin*, No. 95-CV-1151, 1996 WL 312197, at *9 (D.D.C. June 3, 1996) (concluding that plaintiff's efforts to administratively exhaust claims through Merits Systems Protective Board tolled statute of limitations for *Bivens* claims under D.C. law); *Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*, 547 F. Supp. 2d 1, 5-6 (D.D.C. 2008) (finding "good cause to equitably toll the District of Columbia's three-year statute of limitations" for plaintiff's ERISA claim because she "pursued her rights diligently" through mandatory channels for

12

exhausting administrative remedies (internal quotation marks and edits omitted)); *cf. Gull*

*Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 844 & n.8 (D.C. Cir. 1982) (rejecting

laches defense where delay in filing suit resulted from exhausting administrative remedies

because, *inter alia*, "it would be an injustice to unsuccessful bidders [on government

procurement contracts] if we now penalized them merely for exhausting those administrative

remedies" and because plaintiff's "many attempts to receive administrative relief served to put

the government on notice that [plaintiff] was not sleeping on its rights").  The Court concludes

that the complaint states facts which, if true, could support a finding of exhaustion and thereby

merit equitable tolling of the one-year statute of limitations for defamation claims until the date

when the OEA's decisions became final: on or about August 1, 2008.  Accordingly, the Court

will not dismiss plaintiff's defamation claims relating to her termination.

## VI.     PLAINTIFF'S REQUEST FOR NEW TRIAL

In her opposition, plaintiff asserts that she is entitled to a new trial pursuant to Federal

Rule of Procedure 60(b).  (2nd Opp'n at 4.)  Rule 60(b) provides that "[o]n motion and just

terms, the [C]ourt may relieve a party . . . from a final judgment" for several enumerated reasons,

including "newly discovered evidence that, with reasonable diligence, could not have been

discovered in time to move for a new trial" and "fraud (whether previously called intrinsic or

extrinsic), misrepresentation, or misconduct by an opposing party . . . ."  Fed. R. Civ. P. 60(b)(2)

& (3).  Here, plaintiff contends that during the *Owens I* trial, defendants allegedly "admitted to

making a false police report, knowingly suspending her twice for the same act, and conducting

an ongoing criminal investigation," and that such admissions are newly discovered evidence and

proof of fraud.  (2nd Opp'n at 4-5.)  Construing plaintiff's argument as a motion under Rule

60(b)(2) and (3) for relief from the final judgment in *Owens I*, the Court must deny plaintiff's

13

request as untimely.[5]

Motions under Rule 60(b) for reasons of mistake, newly discovered evidence, or fraud "must be made . . . no more than a year after the entry of the judgment or order or the date of the proceeding" from which the movant seeks relief.  Fed. R. Civ. P. 60(c)(1).  This one-year time limit is "ironclad," *Goland v. Central Intelligence Agency*, 607 F.2d 339, 372 (D.C. Cir. 1978) (discussing motion based on newly discovered evidence), and cannot be extended by the Court. *See Carr v. Dist. of Columbia*, 543 F.2d 917, 925-26 (D.C. Cir. 1976) ("We see no elasticity in Rule 60(b)'s one-year time limit on the motions to which it applies; it is not judicially extendable . . . ." (footnote omitted)).

The judgment in *Owens I* was issued on January 24, 2008.  Plaintiff's opposition motion containing her request for a new trial was not filed until May 13, 2009 – almost four months beyond the one-year time limit.  The Court must therefore deny plaintiff's request for relief under Rule 60(b)(3).  *See Baltia Air Lines, Inc. v. Transaction Mgmt., Inc.*, 98 F.3d 640, 643 (D.C. Cir. 1996) (rejecting challenge to original judgment under Rule 60(b)(3) where challenge was made three months after one-year time limit).

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted in part and denied in part.  OAG is dismissed as a defendant.  Counts Two, Six, and Seven are dismissed in their entirety.  Counts One, Three, Four, and Five are dismissed to the extent that their claims are based on paragraphs 3 through 64 of the amended complaint; they survive defendants' motion to the extent that their claims arise from (1) the termination of plaintiff's employment with the

---

[5] In addition, as correctly argued by defendants, any Rule 60(b) request for relief from the judgment in *Owens I* must be addressed to Magistrate Judge Kay.  (*See* Reply at 4 (citing authorities).)

15

MPD or (2) the allegations of paragraphs 65 through 87 of the amended complaint.  A separate

order accompanies this Memorandum Opinion.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

DATE:  July 6, 2009