## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

SONYA OWENS,

     Plaintiff,

     v.

DISTRICT OF COLUMBIA, *et al*.,

     Defendants.

Civil Action No. 08-2029 (AK)

---

### MEMORANDUM OPINION

Plaintiff Sonya Owens ("Owens" or "Plaintiff") brings this Motion for Summary Judgment [67] against Defendants District of Columbia and Adrian Fenty ("Defendants"). Defendants oppose Plaintiff's Motion and make a Cross-Motion for Summary Judgment [72]. This Memorandum Opinion corresponds with the Order filed on June 26, 2012. For the reasons set forth below, Plaintiff's Motion was denied and Defendants' Motion will be granted-in-part and denied-in-part.

### I. BACKGROUND

Plaintiff is a former captain with the District of Columbia Metropolitan Police Department ("MPD") whose employment was terminated in October 2005. On August 31, 2005, prior to being terminated, Plaintiff filed a complaint in this Court alleging retaliation under 42 U.S.C. § 1981 and various claims under the D.C. Human Rights Act, D.C.Code § 2-1402.11 and

§ 2-1402.61(a), (c).[1]  The parties went to trial before the undersigned on those claims, resulting in

a jury verdict for Defendants.  *See Owens v. Dist. of Columbia* ("*Owens I*"), No. 05-CV-1729

(D.D.C. filed Aug. 31, 2005).

Plaintiff filed her complaint in this case on November 25, 2008 and the case was assigned

to Judge Huvelle.  Plaintiff amended her complaint [12], alleging seven claims: Count One:

deprivation of civil rights in violation of 42 U.S.C. § 1983; Count Two: deprivation and

retaliation under the False Claims Act's protections for whistleblowers; Count Three: violation

of employment rights and privileges under the District of Columbia Comprehensive Merit

Personnel Act ("CMPA"), D.C.Code § 1-601.01 *et al*.; Count Four: retaliation under 42 U.S.C. §

1981; Count Five: defamation; Count Six: 18 U.S.C. § 241; Count Seven: 18 U.S.C. § 242.

(Am. Compl. ¶¶ 88-161.)

Defendants filed a Motion to Dismiss [14] all counts of the Amended Complaint and to

dismiss former Mayor Adrian Fenty ("Mayor Fenty") from the lawsuit.  (Defs.' Mot. to Dismiss

at 8-16.)  Defendants argued that Plaintiff's claims in Owens II were barred by *res judicata* based

on the jury's verdict in Owens I and that any new claims in Owens II could have been brought in

Owens I.  (*Id.* at 9-14.)

Judge Huvelle issued an Order [23] on the motion to dismiss on July 6, 2009.  Judge

Huvelle granted Defendants' Motion to Dismiss as to Count Two, Count Six and Count Seven

and denied Defendants' Motion on the remainder of the claims and as to Mayor Fenty.  She

discussed *res judicata* in the accompanying Memorandum Opinion, stating: "paragraphs 2

---

[1]For purposes of this Memorandum Opinion, the case associated with Plaintiff's August
31, 2005 Complaint will be refered to as "Owens I."

through 64 of the instant complaint are virtually identical to allegations found in the Owens I complaint's statement of facts." (Italics omitted) (Judge Huvelle's Mem. Opinion, July 6, 2009 at 10.)  Judge Huvelle held that any reliance on the factual allegations in paragraphs 3 through 64 are barred by *res judicata* because claims stemming from those facts could and should have been brought in *Owens I*.  (*Id.* at 11.)  However, other claims, including those "stemming from Plaintiff's termination from MPD and her efforts to administratively appeal that termination" could not have been raised in Owens I and therefore are not barred by *res judicata*.  (*Id.*)

On August 13, 2009, the parties consented to the case being handled by Magistrate Judge Kay for all purposes and trial.  (Consent [36].)  Defendants filed a Motion for Summary Judgment [51] ("Defendants' First Motion for Summary Judgment") as to the remaining claims and the status of Mayor Fenty as a Defendant.  Defendants made a number of arguments in support of their Motion.  First, they argued Plaintiff's claims do not allege a due process violation because they are based on alleged violations of procedure.  (Defs.' First Mot. for Summary Judgment at 8-9.)  Second, Defendants argued that Plaintiff failed to exhaust her administrative remedies as required by the CMPA because she appealed the Office of Employee Appeals ("OEA") Initial Decision to the OEA Board, but she dropped the appeal before a determination was made.  (*Id.* at 9-10.)  Finally, Defendants asserted that Mayor Fenty should be dismissed from the lawsuit.  (*Id*. at 11-12.)

The undersigned denied Defendants First Motion for Summary Judgment.  (Judge Kay's Mem. Opinion, Nov. 8, 2010 [55].)  The undersigned stated that Plaintiff alleges more than simply violations of procedure; namely, that Defendants retaliated against Plaintiff and deprived her of employment rights following her termination.  (*Id.* at 6.)  The undersigned held that a

genuine dispute of material fact exists regarding whether Plaintiff exhausted her administrative

remedies and relied on Judge Huvelle's conclusion that "the complaint states facts which, if true,

could support a finding of exhaustion . . . ."  (*Id.* at 5; Judge Huvelle's Mem. Opinion, July 6,

2009 at 13.)  Finally, the undersigned noted that Judge Huvelle did not dismiss Mayor Fenty as a

defendant, and "decline[d] to disturb that ruling. . . ."  (Judge Kay's Mem. Opinion, Nov. 8, 2010

at 4.)

Plaintiff's remaining claims include: Count One: deprivation of civil rights under the

First, Fifth and Fourteenth Amendments, 42 U.S.C. § 1983; Count Three: violation of

employment rights and privileges under the District of Columbia Comprehensive Merit

Personnel Act ("CMPA"), D.C.Code § 1-601.01 *et al*.; Count Four: retaliation under 42 U.S.C. §

1981; and Count Five: defamation.

## II.  STANDARD OF REVIEW

Under Federal Rules of Civil Procedure 56, summary judgment is appropriate where the

documents in the record show no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a), (c).  The moving party is

responsible for informing the court of the basis for its motion and identifying portions of the

record that demonstrate the absence of any genuine dispute of a material fact.  *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986).  To be material, a fact must affect the outcome of the case and

relate to the substantive law governing the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248, 106 S.Ct. 2505 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable

inferences in the non-moving party's favor and accept the nonmoving party's evidence as true.

*Anderson*, 477 U.S. at 252.  The non-moving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.*  The non-moving party must establish "sufficient evidence" to favor the jury returning a verdict for the non-moving party. *Anderson*, 477 U.S. at 249 (citation omitted).

### III.  DISCUSSION

#### A.  Exhaustion

In Defendants' Second Motion for Summary Judgment, Defendants outline in detail the various steps Plaintiff took at the administrative level, but they do not argue that Plaintiff failed to exhaust her administrative remedies.  (Defs.' Second Mot. for Summary Judgment ("Defs.' Mot.") at 5-18; Defs.' Reply [76] at 2-5.)  Defendants' Emergency Motion to Continue the Trial indicates an intention on the part of Defendants to re-assert the exhaustion argument in a motion in limine.  (Defs.' Emergency Mot. to Continue the Trial at 7.)  Defendants state:

> "Specifically, it is the District's position that this Court lacks jurisdiction on Plaintiff's defamation claim, CPMA claim and her claims under 42 U.S.C. §§ 1981 and 1983 because the plaintiff did not exhaust her administrative remedies by 'appeal[ing] the decision of [OEA] to the Superior Court of the District of Columbia for a review of the record.'" (*Id.*)

Defendants did raise the issue of exhaustion in their First Motion for Summary Judgment, noting that Plaintiff had a hearing before Judge Robinson, an Administrative Law Judge with the OEA, and that Judge Robinson upheld Plaintiff's termination.  (Defs.' First Mot. for Summary Judgment at 6.)  Plaintiff initially appealed that decision but eventually withdrew that appeal. (*Id.* at 10.)  Defendants state: "Plaintiff's voluntary decision to terminate the appeals process resulted in Judge Robinson's decision becoming final."  (*Id.*)  In the corresponding Memorandum Opinion, the undersigned held that Defendants did not meet the summary judgment standard

when they argued that Plaintiff did not exhaust her administrative remedies.  (Judge Kay's Mem.

Opinion, Nov. 8, 2010 at 5.)

Furthermore, under the CPMA, "administrative remedies are considered exhausted when

a decision [of the Office of Employee Appeals] becomes final in accordance with [Section 1-

606.03]."  D.C.Code § 1-606.03(c); *see also Hoey v. Dist. of Columbia*, 540 F. Supp. 2d 218, 231

(D.D.C.2008) ([p]laintiff is required to present employment disputes to the OEA and "obtain a

Final Decision from that body before pursuing judicial relief"); *Washington v. Dist. of Columbia*,

538 F. Supp. 2d 269, 278-79 (D.D.C. 2008) (Plaintiffs did not exhaust their administrative

remedies because they did not file an appeal with the OEA or a grievance with their union).

Because Defendants assert that Judge Robinson's determination became final and

Defendants did not revisit exhaustion in their Second Motion for Summary Judgment,

Defendants cannot resurrect the issue of exhaustion in a motion in limine and the Court will treat

exhaustion as moot.

### B. Mayor Fenty

Defendants argue that former Mayor Adrian Fenty is entitled to summary judgment as to

Plaintiff's claims against him.  (Defs.' Mot. at 29-30.)  Defendants argued the same point in their

first motion for summary judgment.  (Defs.' First Mot. for Summary Judgment at 11-12.)  The

undersigned denied the first motion for summary judgment as to Mayor Fenty, (Mem. Opinion,

Nov. 8, 2010 at 4), but will grant it here.  The only evidence in the record involving Mayor Fenty

are two letters.  The first, dated May 9, 2005, was written by Owens and addressed to then-

Councilman Fenty, asking for his assistance in reconciling what Owens believed to be

misconduct in MPD regarding investigation into her behavior.  (Supplemental, Ex. 1 [30-1] at

147-48.)  The second letter is the response from then-Councilman Fenty, dated June 2, 2005 and

addressed to then-Chief of Police Charles Ramsey, in which he asks the MPD to read Owens'

letter, review the situation, and notify his office when the matter has been resolved.  (*Id.* at 149.)

These two letters do not form the basis of any claim against Mayor Fenty; rather, they

show evidence of a Councilman receiving a letter of concern from a constituent, and working to

resolve the problem.  Plaintiff references her correspondence with Fenty in paragraph 63 of her

Amended Complaint, a paragraph which Judge Huvelle has held that Plaintiff cannot rely on

based on *res judicata*.  (Judge Huvelle's Mem. Opinion, July 6, 2009 at 11.)  Plaintiff has

presented no evidence that Mayor Fenty was involved in the events leading to Plaintiff's

termination or the decision to terminate Plaintiff.  (*See* Defs.' Mot. at 30.)  Defendants' motion

for summary judgment will be granted as to Mayor Fenty and he will be dismissed from the

action.

## C.  Defamation

A claim for defamation requires (1) that the defendant made a false and defamatory

statement concerning the plaintiff; (2) that the defendant published the statement without

privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at

least negligence; and (4) either that the statement was actionable as a matter of law irrespective

of special harm or that its publication caused the plaintiff special harm.  *Jankovic v. Int'l Crisis

Group*, 494 F. 3d 1080, 1088 (D.C. Cir. 2007) (quoting *Croixland Properties, Ltd. Partnership v.

Corcoran*, 174 F. 3d 213, 215 (D.C. Cir. 1999).

The parties do not discuss the defamation claim at length in their motions.  (Pl.'s Mot. at

7; Def.'s Mot. at 28-29.)  Plaintiff asserts that she received "a poor performance rating because of

'egregious acts' that resulted in her termination.  These false accusations and written reports were published, distributed and are currently available to the public on the internet."  (Pl.'s Mot. at 7.) Defendants argue that Plaintiff's claim fails the publishing requirement of defamation because "MPD did not publish any false statement or written report relating to Plaintiff's termination." (Def.'s Mot. at 28.)  Defendants assert that within the MPD, "reports relating an employee's performance" are considered confidential.  (*Id.* at 29.)  Given the parties' factual dispute relating to whether Plaintiff's employment documents were disseminated online, the cross-motions for summary judgment will be denied as to Plaintiff's defamation claim.

### D.  42 U.S.C. § 1983

A claim under Section 1983 must be based on a violation of a right secured by the Constitution or the laws of the United States.  *Collins v. City of Harker Heights, Tex.*, 502 U.S. 113, 120-21, 112 S. Ct. 1061, 1066 (1992); *Blue v. Dist. of Columbia*, No. 10-CV-1504, 2012 WL 746400 at *6 (D.D.C. Mar. 8, 2012).  To assert a Section 1983 claim against a municipality, the plaintiff must also show that the action was taken "pursuant to official municipal policy" such that the municipality subjected the person to a deprivation of rights or caused a person to be subjected to the deprivation.  *Connick v. Thompson*, – U.S. –, 131 S. Ct. 1350, 1359 (2011) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 692, 98 S. Ct. 2018 (1978)).

Plaintiff alleges that the District of Columbia violated her rights under the First, Fifth and Fourteenth Amendments.  This memorandum opinion will discuss the First Amendment, then the Fourteenth Amendment and finally, the Fifth Amendment.

### 1.  First Amendment

Plaintiff writes that "the 1st Amendment 'right to free speech' must inherently include the right not to speak.  There is no law that requires any person to speak to the police.  There is no law that requires a victim to report a crime to the police."  (Pl.'s Mot. at 6.)  Plaintiff references the First Amendment but the substance of her statement relates to the invocation of the Fifth Amendment right against self-incrimination.  *See Quinn v. U.S.*, 349 U.S. 155, 163, 75 S. Ct. 668, 673-74 (1952) (individual who invoked both First and Fifth Amendment when questioned by Congressional committee was interpreted to have invoked right against self-incrimination). Plaintiff does not allege any facts to support a claim that her affirmative right to speech under the First Amendment was violated.  *See*  U.S. CONST. amend I ("Congress shall make no law . . . abridging the freedom of speech.")  Defendants' Motion for Summary Judgment as to Plaintiff's Section 1983 claim under the First Amendment will be granted.

### 2.  Fourteenth Amendment

The Fourteenth Amendment reads, in pertinent part: "No State shall . . . deprive any person of life, liberty, or property without due process of law."  U.S. CONST. amend XIV, sec. 1.  The District of Columbia is not a State, and therefore the Fourteenth Amendment does not apply to the District of Columbia.  *Bolling v. Sharpe*, 349 U.S. 497, 74 S. Ct. 693 (1954); *Powers-Bunce v. Dist. of Columbia*, 479 F. Supp. 2d 146, 153 (D.D.C. 2007).  Defendants will be granted summary judgment on Plaintiff's Section 1983 claim under the Fourteenth Amendment.

### 3.  Fifth Amendment

The Fifth Amendment due process clause, like the Fourteenth Amendment, protects

citizens from being "deprived of life, liberty, or property without due process of law." U.S.

CONST. amend V.  The Fifth Amendment, unlike the Fourteenth Amendment, applies to the

District of Columbia.  *Bolling*, 349 U.S. at 500, 74 S. Ct. at 695.  Property interests are created

not by the United States Constitution, but derived from independent sources such as statutes,

regulations, ordinances or other existing rules or understandings.  *Bd. of Regents v. Roth*, 408

U.S. 564, 577, 92 S. Ct. 2701 (1972).  Public employees who may only be discharged for cause

have a property interest in continued employment and are entitled to due process prior to being

terminated.  *Fonville v. Dist. of* Columbia, 448 F. Supp. 2d 21, 26-27 (D.D.C. 2006); *Crockett v.*

*Dist. of Columbia Metropolitan Police Dep't*, 293 F. Supp. 2d 63, 67 (D.D.C. 2003).  The

CPMA applies to employees of the District of Columbia, and sets out a system by which

employees can only be disciplined for cause and prior notice must be given.  D.C.Code § 1-

608.01.  The District of Columbia does not dispute that Plaintiff is covered by the CMPA and

therefore, she is entitled to due process under the Fifth Amendment.

"The fundamental requirement of procedural due process is the opportunity to be heard

'at a meaningful time in a meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.

Ct. 893, 902 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191

(1951) (Frankfurther, J., concurring)).  Where a public employee is terminated, the Supreme

Court has held that prior to the termination, the employer must provide the employee (1) oral or

written notice of the charges; (2) an explanation of the employer's evidence; and (3) an

opportunity to the employee's present side of the story.  *Cleveland Bd. of Educ. v. Loudermill*,

470 U.S. 532, 546, 105 S. Ct. 1487, 1495 (1985); *Crockett*, 293 F. Supp. 2d at 68.

Both parties agree that Plaintiff and her attorney at the time, David Branch, attended a

termination hearing before the MPD Police Trial Board's Adverse Action Panel ("the Panel") on August 15, 2005.  (Defs.' Mot. at 9.)  At the hearing, Plaintiff argued that she had not received information she needed for the hearing in a timely manner, and she and Branch left the hearing.  (*Id.* at 10.)  After Plaintiff and Branch left, the Panel continued the hearing, which was rescheduled for September 1, 2005, but did not take place until September 12 and 13, 2005 ("September 12 hearing").  (*Id.* at 10-11.)  Plaintiff did not attend the September 12 hearing, which resulted in a recommendation that Plaintiff be terminated.  (*Id.* at 15.)  Defendants argue that Plaintiff had notice of the September 12 hearing, and include as an exhibit a letter, dated September 8, 2005 from Branch to Inspector Sherrod.  (Defs.' Mot., Ex 5 [72-6].)  Branch explains in the letter that he no longer represents Owens and that he will not represent her at the September 12 hearing.  (*Id.*)  The bottom of the letter notes: "Cc: Sonya Ownes [sic]."  (*Id.*)

Plaintiff states in her motion for summary judgment that the Defendants held the hearing on September 12, 2005 "without ever notifying her."  (Pl.'s Mot. at 1.)  Branch's letter makes no indication of whether Plaintiff would attend the hearing and does not confirm that Plaintiff actually received a copy of the letter.  During the OEA appeal, the administrative law judge specifically asked Plaintiff about the letter, and Plaintiff stated: "[y]es, at some point in this, I received a copy of this in the mail." (Defs.' Mot., Ex. 7 at 512.)  But Plaintiff explained at length that at the time, she did not know the hearing on August 15, 2005 had been continued and that she never received confirmation that the August 15, 2005 hearing was rescheduled for September 12 and 13, 2005.  (*Id.* at 513-15.)  The parties' disagreement over whether Plaintiff had sufficient notice of the rescheduled hearing is a genuine dispute of material fact.

Defendant argues that regardless of whether Plaintiff had notice of the September 12

hearing, procedural due process was satisfied because (1) Plaintiff knew about the charges and attended the original hearing on August 15, 2005 and (2) Plaintiff was given a de novo hearing before the Office of Employee Appeals ("OEA") after she was terminated, in which Plaintiff participated.  (Defs.' Mot. at 24-25.)  It is possible for Plaintiff to be afforded procedural due process even if she is deprived of some procedures under the CPMA.  *See Payne v. Dist. of Columbia*, 808 F. Supp. 2d 164, 174 (D.D.C. 2011).

The parties disagree about whether the OEA hearing was indeed de novo.  (Def.'s Reply at 4-5; Pl.'s Surreply at 2-3)  The ALJ, in his Initial Decision, made an "initial determination" that he "was unable to hold a *de novo* Evidentiary Hearing," but later decided that "an evidentiary hearing was warranted.  (Defs.' First Mot. for Summary Judgment, Ex. 3 [51-3] at 2-3.)  The Initial Decision further states that the issue before the ALJ was "[w]hether the Agency's adverse action of terminating the Employee from service was done in accordance with applicable law, rule, or regulation."  (*Id.* at 3.)  The ALJ does not specify that the review was conducted *de novo*.[2]  Genuine disputes of material fact exist about whether the evidentiary hearing was a *de novo* hearing, and regardless of the standard of review used by the ALJ, whether the hearing was sufficient to satisfy procedural due process.  Both Plaintiff and Defendants' Motions for Summary Judgment will be denied as to Plaintiff's procedural due process claim.

The second prong of the Fifth Amendment Due Process Clause is substantive due process.  To constitute a substantive due process violation, the defendant's behavior "must be so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."

---

[2]The ALJ's conclusion stated that "given the totality of the circumstances as enunciated in the instant decision, the Agency's action of removing the Employee should be upheld."  (Defs.' First Mot. for Summary Judgment at 20.)

*Estate of Phillips v. District of Columbia,* 455 F.3d 397, 403 (D.C. Cir. 2006); *see also AFGE,*

*AFL-CIO, Local 446 v. Nicholson*, 475 F.3d 341, 353 (D.C. Cir. 2007) ("a mere violation of the

law does not give rise to a constitutional claim.")  Plaintiff's allegations in this case assert

violations of the law, but they do not shock the conscience.  Defendants conducted an

investigation of Plaintiff, and terminated Plaintiff based on the investigation's findings.

Defendants' Motion for Summary Judgment on Plaintiff's substantive due process claim will be

granted.

### E.  42 U.S.C. § 1981

Plaintiff alleges a claim for retaliation under 42 U.S.C. § 1981.  She argues that in

September 2005, she filed a charge of discrimination with the Equal Employment Opportunity

Commission ("EEOC") against Defendants.  (Am. Compl. at ¶ 133; Pl.'s Mot. at 4.)  She states

that "within seven business days [after filing the charge], the Defendant conducted a hearing that

terminated her employment.  (Am. Compl. at ¶ 134.)  Plaintiff alleges that she was not notified of

the termination hearing date.  (Pl.'s Mot. at 2.)  Defendants do not directly counter Plaintiff's

allegation that the termination hearing was retaliation for filing the EEOC charge, though they

note that Plaintiff's termination hearing was originally scheduled for August 15, 2005.  (Defs.'

Mot. at 9.)  A genuine issue of material fact exists as to whether the termination hearing involved

retaliation for filing a charge before the EEOC and summary judgment will be denied on this

claim.

### F.  Comprehensive Merit Protection Act

Neither party directly addresses Plaintiff's claim under the CMPA in their cross-motions

for summary judgment.  D.C.Code §§ 1-601.1, et seq.,  The CMPA establishes procedures

governing employees of the District of Columbia, including "impartial and comprehensive administrative or negotiated procedures for resolving employee grievances." D.C.Code § 1-601.2(a)(5); *see also Hoey v. District of Columbia*, 540 F. Supp. 2d 218 (D.D.C. 2008).

In this case, factual disputes exist about the procedures Defendant used to terminate Plaintiff, specifically, though not limited to, whether Plaintiff received notice of her termination hearing. (Pl.'s Mot. at 2.) Accordingly, a genuine issue of material fact exists as to Plaintiff's claim under the CMPA and both parties' motions for summary judgment will be denied.

## IV. CONCLUSION

Based on the above reasons, Plaintiff's Motion for Summary Judgment will be denied in the corresponding Order dated June 26, 2012. Defendants' cross-motion for summary judgment will be granted as to Mayor Adrian Fenty, who will be dismissed as a Defendant. Additionally, Defendant's cross-motion will be granted as to the claim of civil rights violations under 42 U.S.C. § 1983 based on the First and Fourteenth Amendments, and substantive due process under the Fifth Amendment. Remaining claims in this case include: (1) defamation; (2) civil rights violations under 42 U.S.C. § 1983 based on procedural due process under the Fifth Amendment; (3) retaliation under 42 U.S.C. § 1981; (4) the Comprehensive Merit Protection Act.

DATE: July 13, 2012                               _____/s/_____

                                                  ALAN KAY
                                                  UNITED STATES MAGISTRATE JUDGE