## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

SONYA OWENS,

          Plaintiff,

   v.

DISTRICT OF COLUMBIA, et al.,

          Defendants.

</td><td>

Civil Action No. 08-CV-2029 (AK)

</td></tr>
</table>

## MEMORANDUM OPINION

Defendant District of Columbia ("District" or "Defendant") brought this Motion for Reconsideration [91] of the Court's July 13, 2012, Order [88].  Plaintiff Sonya Owens ("Ms. Owens" or "Plaintiff") opposed Defendant's Motion and brought her own Motion for Reconsideration [95].  This Memorandum Opinion corresponds with the Order [101] filed on February 14, 2013.  For the reasons set forth below, the Defendant's Motion for Reconsideration will be granted and the Plaintiff's Motion for Reconsideration will be denied.  As a result of these rulings, Ms. Owens's remaining claims will be dismissed and the Court will dismiss the case with prejudice.

## BACKGROUND

### I.   Ms. Owens's Employment with the Metropolitan Police Department

The background of Plaintiff's employment is set forth in detail with citations in the Court's Memorandum Opinion dated July 13, 2012 [88].  Thus this is a synopsis of that background.

Ms. Sonya Owens was a captain with the District of Columbia Metropolitan Police Department ("MPD").  In June 2001, the Equal Employment Opportunity Commission ("EEOC") interviewed Ms. Owens as a witness while investigating discrimination complaints from two other MPD officers.  In July 2004, the two officers filed a federal discrimination lawsuit.  In November 2004, the MPD learned that Ms. Owens was scheduled as a witness for the two complainants and she testified in February 2005.  Thereafter Ms. Owens alleged that the

MPD revoked her police official duties, restricted her access to the general public, removed her duty assignments, and notified her of a proposed suspension for an "overdue correspondence," which became effective in February 2005.

In early March 2005, the MPD Internal Affairs section received a complaint from the Arlington County Animal Welfare League that involved Ms. Owens and one of her two dogs. On March 16, 2005, Ms. Owens filed a Petition for Appeal of her suspension with the Office of Employee Appeals ("OEA").  In April 2005, Ms. Owens was again suspended for twelve days for being absent without leave for 80 hours during her earlier suspension.  (Am. Compl. [12] ¶ 58.)  As a result, Ms. Owens supplemented her OEA appeal to include the second suspension.  In May 2005, the MPD gave Ms. Owens a notice of termination for her two absences without leave, the Animal Welfare League complaint, and alleged "criminal activity."  In response, Ms. Owens requested all documents and records pertaining to the MPD investigation.

## II.    Administrative and Judicial Review

On August 15, 2005, Ms. Owens and her then counsel attended a scheduled Administrative Hearing before the Police Trial Board about her termination.  The MPD provided her with two cassette tapes of interviews immediately before the Administrative Hearing and Ms. Owens requested a continuance to review the contents of the tapes.  (Am. Compl. App. 4 Tr. 4:5-6; 5:6-10 [12].)

Concurrent with her administrative proceedings, on August 31, 2005, Ms. Owens filed a complaint in this court, alleging retaliation under 42 U.S.C. § 1981 and various claims under the D.C. Human Rights Act, D.C. Code § 2-1402.11 and § 2-1402.61.  (*See Owens v. D.C.* ("*Owens I*"), No. 05-CV-1729, Compl. [1].)  Shortly after Ms. Owens filed her lawsuit, the MPD resumed the hearing on her suspensions.  In October 2005, the MPD, following the Police Trial Board's unanimous decision against Ms. Owens, she was told that her employment would be terminated effective November 2005.  (OEA Matter No. 1601-005-06 at 13.)  The decision to terminate her was upheld by the Chief of Police, Charles Ramsey.  (*Id.*)  On November 28, 2005, Plaintiff filed a Petition for Appeal with the OEA based on her termination.  On July 14, 2006, an Administrative Law Judge issued an Initial Decision on the appeal of her suspensions, dismissing Ms. Owens's claims.  Ms. Owens filed a timely Petition for Review on August 22, 2006.

In September 2006, the OEA ordered the MPD to provide Ms. Owens with the transcripts of her suspension hearing.  (Am. Compl. [12] ¶ 77.)  In October 2006, the OEA conducted a

hearing on Ms. Owens's appeal of her termination in which Ms. Owens participated as a witness. (OEA Initial Decision, Ex. 3 of Def.'s Mot. for Summ. J. [51-3] at 12.)  On November 21, 2007, the OEA Administrative Judge issued an Initial Decision about Ms. Owens's termination and she filed a timely Petition for Review on December 26, 2007. (App. 1 to Am. Compl. [12] at 3, 7.) Thus, at the close of 2007, Ms. Owens had two initial decisions issued by OEA Administrative Law Judges upholding her two suspensions and her termination.[1]

While the Petition for Review of her termination was pending before the OEA, on April 9, 2008, Ms. Owens filed a Petition for Review with the District of Columbia Court of Appeals to seek review of the Administrative Law Judge's decision upholding her termination.  The District of Columbia Court of Appeals dismissed the petition for lack of jurisdiction on May 7, 2008.  The Court found that because Ms. Owens had pending petitions for review before the OEA Board, an appealable final administrative order did not exist.

On May 12, 2008, Ms. Owens filed a motion to withdraw both of her petitions for review that were pending before the OEA Board.  On July 24, 2008, the OEA granted Ms. Owens's motion and dismissed both appeals.  In its dismissal, the OEA noted that the Initial Decisions of the Administrative Law Judges would become final decisions within five days of the issuance of the OEA's Order and that Ms. Owens could appeal the OEA final decisions within thirty days in the District of Columbia Superior Court.  (Ex. 1 of Am. Compl. [12] at 25.)  According to Ms. Owens, also on July 24, 2008, the OEA issued its final order stating that its initial decision would be its final decision.  (Ex. 2 of Pl.'s Response Br. [74] at 47-48, 50.)  On August 22, 2008, Ms. Owens appealed to the District of Columbia Court of Appeals on both of the final decisions of her suspensions and termination.  The Court ordered that Ms. Owens had twenty days to show why the appeal should not be dismissed for having been taken on a non-final and non-appealable order.  (Ex. 2 of Pl.'s Response Br. [74] at 46.)  Additionally, the Court ordered Ms. Owens to show how she was "aggrieved" by the OEA granting her motions to withdraw her petitions with respect to her suspensions and termination.  On September 22, 2008, Ms. Owens submitted a Response to the Court's Order explaining that she appealed the OEA's final decisions.  The District of Columbia Court of Appeals found that Ms. Owens did not respond and dismissed her cases on September 25, 2008.  On October 1, 2008, Ms. Owens filed a motion with the District

---

[1] In January 2008, the undersigned conducted a jury trial on Ms. Owens's suspension claims.  On January 22, 2008, the jury rendered a verdict for the Defendants District of Columbia and Mayor Adrian Fenty.  (*See Owens I*, Judgment on the Verdict for Def. [54], 24 Jan. 2008).  No party appealed.

of Columbia Court of Appeals to reinstate her appeal given that the OEA's decisions on both matters were final.  (Ex. 2 of Pl.'s Response Br. [74] at 47-49.)  The Court of Appeals denied Ms. Owens's Motion, finding that Ms. Owens suffered no legal injury after the OEA granted her motion to dismiss the petitions.  (*Id.* at 56.)

### III.   Present Suit

On November 25, 2008, Ms. Owens initiated the pending lawsuit against the District and Mayor Adrian Fenty (Compl. [1]) and filed an amended complaint on March 20, 2009.  (Am. Compl. [12].)  The Amended Complaint contained seven counts: Count 1 Unlawful Deprivation of Civil Rights in Violation of 42 U.S.C. § 1983; Count 2 Unlawful Deprivation and Retaliation in Violation of the False Claims Act involving Whistleblower Employee Protections; Count 3 Deprivation of Employment Rights and Privileges as Protected under District of Columbia Comprehensive Merit Personnel Act (CMPA); Count 4 Unlawful Retaliation in Violation of U.S.C. 42 § 1981; Count 5 Defamation; Count 6 Violation of 18 U.S.C. § 241; and Count 7 Violation of 18 U.S.C. § 242.

On July 6, 2009, U.S. District Court Judge Ellen Huvelle granted the Defendants' Motion to Dismiss as to Counts 2, 6, and 7: Whistleblower protection under the False Claims Act, 18 U.S.C. § 241, and 18 U.S.C. § 242.  (Judge Huvelle's Mem. Opinion, July 6, 2009 [24].)  The trial court found that *res judicata* based on the *Owens I* verdict barred Ms. Owens's claims prior to her termination, but permitted claims about Ms. Owens's termination and administrative appeal.  (*Id.* at 11.)

On August 13, 2009, the parties consented to the undersigned Magistrate Judge handling the case for all purposes, including trial.  (Consent [36].)  On November 8, 2010, the Court denied the Defendants' Motion for Summary Judgment.  (Judge Kay's Mem. Order, Nov. 8, 2010 [55].)  On June 26, 2012, the Court denied Ms. Owens's Motion for Summary Judgment and granted-in-part and denied-in-part the Defendants' Motion for Summary Judgment.  (Judge Kay's Mem. Order, June 26, 2012 [78].)  In a July 13, 2012, memorandum opinion, the Court granted the Defendants' Motion for Summary Judgment as to the claims against Mayor Fenty and Ms. Owens's 42 U.S.C. § 1983 claims based on the First Amendment, substantive due process of the Fifth Amendment, and the Fourteenth Amendment.  (Judge Kay's Mem. Op., July 13, 2012 [88].)  The Court denied the Defendants' Motion for Summary Judgment as to Ms. Owens's 42 U.S.C. § 1983 claims for procedural due process under the Fifth Amendment,

defamation, retaliation under 42 U.S.C. § 1981, and the District of Columbia CMPA.  (*Id.*)  The Court will consider the Motions for Reconsideration filed by both the District of Columbia [91] and Ms. Owens [95].

## MOTION TO RECONSIDER: STANDARD AND SCOPE

### I.       Standard of Review

Courts review Motions for Reconsideration narrowly.  Under Fed. R. Civ. P. 59(e), a Motion for Reconsideration "is not a second opportunity to present argument upon which the Court has already ruled, nor is it a means to bring before the Court theories or arguments that could have been advanced earlier." *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001) (internal citations omitted).  A court has discretion to grant such a motion which "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057-1058 (D.D.C. 1998) (internal quotation marks and citations omitted).

### II.      Scope of Motion to Reconsider

The Court will entertain Motions for Reconsideration in very limited circumstances.  Ms. Owens's Motion for Reconsideration [95] included the dismissal of claims against former Mayor Fenty, the dismissal of her 42 U.S.C. § 1983 claims, and the denial of her motion for summary judgment.  In her Motion for Reconsideration, Ms. Owens failed to advance any novel factual evidence or changes in the law to support her claims.  Rather, she simply reiterated the same arguments she made in her Summary Judgment Motion.  Therefore, the Court denies Ms. Owens's Motion for Reconsideration.

In the District of Columbia's Motion for Reconsideration [91], the District's arguments included the absence of municipal liability, the inapplicability of § 1981 to Ms. Owens's claim, the lack of jurisdiction under the CMPA, and the lack of evidence for Ms. Owens's defamation claim.  While the majority of these arguments did not represent a significant change in controlling law or the existence of new evidence, the issue of subject-matter jurisdiction can be raised at any time. Fed. R. Civ. Pro. 12(h)(3).  Therefore, the District's argument as to the CMPA and the applicability of § 1983 and § 1981 will be treated as valid jurisdictional challenges that warrant reconsideration.

This Court, having reviewed the District's Motion for Reconsideration, concurs with the District's jurisdictional arguments and further concludes that the Court does not have jurisdiction over the remaining Counts 1, 3, 4, and 5.

## DISCUSSION

I.     **The CMPA serves as the exclusive remedy for employment-based conflicts in the District of Columbia**

a.   **Purpose of the CMPA and Coverage of Ms. Owens**

The CMPA provides a remedy for the majority of employment related conflicts that occur between the District of Columbia and its employees.  The CMPA "establish[es] impartial and comprehensive administrative or negotiated procedures for resolving employee grievances." D.C. Code § 1-601.02 (2012).  As the District noted in its motion, the CMPA was "plainly intended…to create a mechanism for addressing virtually every conceivable personnel issue among the District, its employees, and their unions – with a reviewing role for the courts as a last resort, not a supplementary role for the courts as an alternative forum."  *D.C. v. Thompson*, 593 A.2d 621, 634 (D.C. 1991) (internal quotation marks omitted).

Under the statute, the CMPA applied to Ms. Owens in her position as a MPD captain. The CMPA applies to all District of Columbia employees unless specifically exempted.  D.C. Code § 1-602.01 (2012), *see also Crockett v. D.C. Metro. Police Dep't.*, 293 F. Supp. 2d 63 (D.D.C. 2003) (CMPA procedure covered former MPD employee plaintiff).  Therefore, as the District correctly noted, the CMPA created the contours of Ms. Owens's employment relationship with the District.

b.   **Claims within the CMPA's Jurisdiction**

The CMPA statutorily covers the majority of conflicts arising out of employment relationships with the District.  CMPA provisions address "(1) employee performance ratings, including corrective actions when necessary; (2) employee discipline through adverse action proceedings; and (3) prompt handling of employee grievances."  *Stockard v. Moss*, 706 A.2d 561, 564 (D.C. 1997) (internal quotation marks and citations omitted); *see also Thompson*, 593 A.2d at 629.  These types of conflicts include disagreements about salary and compensation, *White v. D.C.*, 852 A.2d 922 (D.C. 2004); defamation, *Stockard*, 706 A.2d 561, *Robinson v. D.C.*, 748 A.2d 409 (D.C. 2000), *Holman v. Williams*, 436 F. Supp. 2d 68 (D.D.C. 2006); breach

of employment contract, *Bowers v. D.C.*, 2011 WL 2160945 (D.D.C. 2011); and unfair labor practices, *Osekre v. Gage*, 698 F. Supp. 2d 209 (D.D.C. 2010). Additionally, constitutional claims, despite their federal nature, fall within the CMPA jurisdiction when they are essentially state law claims that the plaintiffs construed in a constitutional light so as to seek federal court jurisdiction. *Washington v. D.C.*, 538 F. Supp. 2d 269, 280 n.5 (D.D.C. 2008) ("even though the plaintiffs dress their defamation claims in constitutional garb, they are effectively indistinguishable from common-law defamation claims in regards to their coverage under the remedies of the CMPA for employment disputes.") Simply presenting a constitutional claim is insufficient to exempt plaintiffs from complying with the CMPA procedure; "[p]laintiffs therefore cannot use a constitutional hook to reel their CMPA-precluded claims into this Court." *McManus v. D.C.*, 530 F. Supp. 2d 46, 79 (D.D.C. 2007).

Despite this expansive policy, several types of actions reach beyond the CMPA radius. In the most egregious instance, the District of Columbia Court of Appeals found that sexual harassment and retaliation claims extended beyond a personnel issue and provided the plaintiff with a permissible tort suit. *King v. Kidd*, 640 A.2d 656, 663 (D.C. 1993). "Public employees do not lose their common law right to sue for their injuries…[when] neither those injuries nor their consequences trigger the exclusive provisions of the CMPA." *Id.* at 664 (internal quotation marks and citations omitted). Additionally, the federal court may have jurisdiction when the plaintiff is entitled to remedies beyond what the administrative system can provide. *Washington*, 538 F. Supp. 2d at 278. The United States Court of Appeals for the District of Columbia held that CMPA-covered employees may sue in federal court in circumstances where they raise federal claims and seek relief "that are beyond the compass of the D.C. administrative/judicial system," such as punitive and compensatory damages under the Veterans Reemployment Act. *Bridges v. Kelly*, 84 F.3d 470, 471 (D.C. Cir. 1996). Several United States District Court judges of this circuit have similarly found that the CMPA does not preclude jurisdiction when plaintiffs seek punitive damages and relief unavailable from the OEA and District of Columbia courts. *See Sharma v. D.C.*, 791 F. Supp. 2d 207 (D.D.C. 2011) (holding that CMPA does not preempt claims under the D.C. Whistleblower Protection Act); *Washington*, 538 F. Supp. 2d at 276 (finding jurisdiction is permitted when administrative remedies are inadequate, meaning "the agency has expressed a willingness to act, but the relief it will provide through its action will not be sufficient to right the wrong," citing *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795

F.2d 90, 107 (D.C. Cir. 1986)); *Crockett*, 293 F. Supp. 2d 63 (noting that the U.S. District Court had jurisdiction when the D.C. system could not grant the plaintiff full relief for his federal claims, specifically, compensatory and punitive damages that the OEA did not have authorization to award).

### c.  Procedural Process under the CMPA

The CMPA establishes clear procedures for aggrieved employees that include administrative remedies and supplementary review by the District of Columbia Superior Court.

### 1.  Exhaustion of Administrative Remedies

For claims governed by the CMPA, the CMPA procedure must be the first remedy for District employees.  If there is any question as to whether the CMPA applies, the plaintiff "[is] still required in the first instance to invoke the CMPA's…procedure because [t]he determination whether the OEA has jurisdiction is quintessentially a decision for the OEA to make in the first instance." *McManus*, 530 F. Supp. 2d at 78 (internal quotation marks and citations omitted). While the judicial process may provide more favorable recovery for an employee, the CMPA must be the first line of relief.  As the District of Columbia Court of Appeals stated, "[a]n exclusive remedy does not lose its exclusivity upon a showing that an alternative remedy might be more generous."  *White*, 852 A.2d at 927.

Under the CMPA, plaintiffs must exhaust their administrative remedies before reaching the District of Columbia Superior Court for review.  "The plaintiffs…should not be allowed to undermine the administrative process by availing themselves of initial review by the [Office of Administrative Hearings] and then refusing to participate in subsequent stages of appeal." *Washington*, 538 F. Supp. 2d at 275 (internal citations omitted).  Failing to fully exhaust the complete administrative appeals process can serve as grounds to negate jurisdiction over an entire case.  The District of Columbia Superior Court found that once an employee filed a lawsuit and "abandoned judicial review of the OEA decision to terminate him, [he] was precluded from filing a separate legal action challenging his termination."  *Lewis v. D.C. Dep't of Motor Vehicles*, 987 A.2d 1134, 1137 (D.C. 2010).  The Superior Court dismissed the employee's complaint, finding no jurisdiction because he had "improperly us[ed] the Superior Court as an 'alternate forum' to challenge the agency's adverse action."  *Id.* (internal citations omitted).

### 2.  Review by the District of Columbia Superior Court

Judicial review by the District of Columbia Superior Court is available for all CMPA claims.  As the District of Columbia Court of Appeals stated in *Thompson*, "[a]n employee may appeal any adverse action or decision on an employee-initiated grievance to the OEA, with the right of judicial review in Superior Court." 593 A.2d at 626.

### 3.  Federal Jurisdiction over CMPA claims

The CMPA has presented a complex jurisdictional overlap among administrative agencies, the District of Columbia Superior Court, and the United States District Court of the District of Columbia.  While the CMPA provides employees with a statutorily designed grievance process, this process is not limited solely to administrative remedies.  The United States Court of Appeals noted that plaintiffs must do more than simply exhaust their administrative remedies in order to file in federal court; they must also provide a clear basis for federal subject matter jurisdiction.  *Lucas v. United States*, 268 F.3d 1089, 1094-1095 (D.C. Cir. 2001).  Within the past year, a United States District Court judge noted that "[t]he D.C. Circuit has not yet resolv[ed] whether th[e] [CMPA] exhaustion requirement is better understood as jurisdictional or nonjurisdictional in federal court." *Saint-Jean v. D.C.*, 846 F. Supp. 2d 247, 265 (D.D.C. 2012) (internal citations and quotation marks omitted).  In a footnote, the District of Columbia Court of Appeals stated that the CMPA's "exclusivity and exhaustion requirements do not, however, necessarily foreclose a subsequent suit in local or federal court challenging the adequacy of the process itself."  *Johnson v. D.C.*, 552 F.3d 806, 811 n.2 (D.C. Cir. 2008).

### d.  Exhaustion of procedure under the CMPA satisfies constitutional due process requirements

Given the layers of administrative and judicial review it provides, the CMPA satisfies constitutional due process requirements.  The Supreme Court established three factors in *Mathews v. Eldridge* to determine if an administrative procedure satisfies due process requirements.  424 U.S. 319 (1976).  They are 1) "the private interest that will be affected," 2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and 3) "the Government's interest, including the function involved and the fiscal or administrative burdens that the additional or substitute procedural requirement would entail."  *Id.* at 335.  When

considering the process granted by the CMPA under the *Mathews v. Eldridge* test, "[t]he CMPA procedures satisfy these requirements."  *McCormick v. D.C.*, 2012 WL 5194073, 8 (D.D.C. 2012).  Even *arguendo* if the District did not meticulously follow the CMPA, it is still possible to satisfy constitutional due process.  Courts have found that "a breach of state procedural requirements is not, in and of itself, a violation of the Due Process Clause."  *Payne v. D.C.*, 808 F. Supp. 2d 164, 174 (D.D.C. 2011) (internal quotes and citations omitted).

II.     **The CMPA precluded federal court jurisdiction for Ms. Owens's defamation claim**

The Comprehensive Merit Personnel Act precluded the Court from having jurisdiction over Ms. Owens's defamation claim.  The CMPA's jurisdiction wholly covered this tort claim and Ms. Owens should have utilized her administrative remedies.

a.  **CMPA Coverage**

Courts have repeatedly found defamation to be a claim that lands squarely within the CMPA's jurisdiction.  Given that the CMPA provided expansive coverage of "virtually every conceivable personnel issue," the District of Columbia Court of Appeals found the plaintiff's defamation claim deserved CMPA grievance procedures rather than initial judicial review. *Stockard*, 706 A.2d at 566.  The District of Columbia Court of Appeals reiterated this finding in *Robinson*, when Robinson sued because he faced unfounded allegations of sexual harassment that included complaints and internal memoranda circulating through his workplace.  748 A.2d at 410.  Unlike Ms. Owens, the Department of Corrections Operations commander and an independent fact-finding committee found the allegations meritless and recommended the plaintiff's immediate return to his prior workplace, though his return took five months to effectuate.  *Id.*  The court found that his tort claims, including defamation, originated from the procedure he received during his employment dispute rather than the underlying sexual harassment claim and dismissed the case for lack of jurisdiction.  *Id.* at 412.  *See also Holman*, 436 F. Supp. 2d 68 (dismissing defamation claim as an employment-related claim falling under the CMPA's definition of a grievance).

Ms. Owens's defamation claim must be remedied pursuant to the CMPA procedure because it arose directly from the disciplinary action that resulted in her suspension from her employment.  Ms. Owens based her defamation claim, at least in part, on the publication of the administrative opinion in her suspension claims.  (Ex. 8 of Def.'s Mot. for Summ. J. [72-9].)

The CMPA mandates OEA publication of administrative decisions, D.C. Code § 606.30(c) (2012), so publication was in fact one of the procedural safeguards that the CMPA provided Ms. Owens.  The hearing and decision arose solely out of her employment-related claims and therefore should be addressed under CMPA procedure.  The Court must next consider whether Ms. Owens properly attempted to remedy her defamation claim under the CMPA.

### b.  Ms. Owens did not exhaust her CMPA remedies for her defamation claim

Ms. Owens's defamation claim did not arise until she filed her second federal lawsuit.[2] Therefore, she never attempted to remedy this claim through the CMPA-established procedure. Given that defamation is a claim within the CMPA's reach, Ms. Owens needed to first exhaust her administrative remedies on the defamation claim for this Court to appropriately have jurisdiction over the claim.  Therefore, the Court will grant the Defendant's Motion for Reconsideration with regard to Ms. Owens's defamation count and dismiss this claim for failure to exhaust administrative remedies under the CMPA.

### III.    The CMPA precluded federal court jurisdiction for Ms. Owens's § 1983 due process claim

Ms. Owens's § 1983 due process claim arose from an employment dispute under the CMPA.  Ms. Owens elected to withdraw her administrative appeals, thereby precluding the Court's jurisdiction.  Although she did not fully exhaust her administrative remedies, the District satisfactorily fulfilled her constitutional due process rights through the procedure she received.

### a.   The CMPA covered Ms. Owens's § 1983 due process claim

Ms. Owens grounded her due process claim in the process she received during the termination of her employment.  Although she presented it as a constitutional claim, this claim arose within the scope of an employment dispute given that it protested the treatment she received, culminating in her termination and its appeal.  Although the CMPA procedure did not in fact grant the relief she sought, Ms. Owens failed to demonstrate that the District of Columbia administrative or judicial systems were incapable of granting her sufficient relief nor did she provide evidence of the absence of procedural due process.  Additionally, she provided no

---

[2] Assuming *arguendo* that Ms. Owens had defamation claims arising from the administrative proceeding reviewing her termination, the injury would have occurred during the administrative process, including the hearing in October 2006 and the OEA's initial decision, issued on November 21, 2007.  Ms. Owens filed this lawsuit pleading defamation in this Court on November 25, 2008.  Given that the District of Columbia statute of limitations for defamation is one year, D.C. CODE § 12-301(4) (2001), Ms. Owens would have been statutorily barred from a defamation claim.  Additionally, defamation is a state law claim over which this Court would only have pendent jurisdiction premised on the existence of other federal claims.

evidence that her claims were grounded in specific federal law outside of § 1983 and § 1981 in order to exempt it from the CMPA procedure.  Accordingly, she failed to exhaust her CMPA remedies before seeking judicial review.

**b. Ms. Owens withdrew her claims from the CMPA administrative procedure, thereby precluding the Court's jurisdiction**

Because Ms. Owens withdrew from the CMPA procedure, she waived the Court's ability to review her claim.  As the District of Columbia Court of Appeals and United States District Court have stated, abandoning the administrative procedure and seeking judicial review as an alternative forum precludes the reviewing ability of the court.  *See Washington*, 538 F. Supp. 2d 269; *Lewis*, 987 A.2d 1134.  While the OEA took an inordinate amount of time to reach its decisions in Ms. Owens's case, she cannot elect to abandon the statutory procedure to seek relief in a more favorable forum.  Given her unilateral abandonment of the CMPA by her withdrawal of her administrative appeal, this Court lacks subject matter jurisdiction to review Ms. Owens's § 1983 claim.

**c. Although Ms. Owens did not exhaust her CMPA remedies of administrative process and review by the District of Columbia courts, the District fully satisfied the requirements of constitutional due process**

This Court finds as a matter of law that Ms. Owens did not fully exhaust her administrative remedies as prescribed by the CMPA's statutory procedures.  Despite her failure to exhaust all available CMPA remedies, the District still provided Ms. Owens with procedure sufficient to fulfill constitutional due process requirements.

As noted above, while pursuing her administrative remedies, Ms. Owens initiated several appeals and received multiple final decisions on her suspensions and termination.  Ms. Owens initially attended a MPD Police Trial Board hearing with her counsel and received a subsequent review of the Trial Board's decision by the Chief of Police.  She then appealed the decisions to the OEA, where she received independent reviews of her suspensions and her termination by Administrative Law Judges who upheld the suspensions and the termination.  Plaintiff appealed both ALJ decisions for review by the OEA Board, but on May 12, 2008, of her own volition, she filed a motion to withdraw both of her pending appeals.  The CMPA also afforded Ms. Owens the opportunity to seek judicial review by the District of Columbia Superior Court with subsequent appeal to the District of Columbia Court of Appeals.  Instead of following the review

process of the CMPA, Plaintiff elected to ignore taking her case to the DC Superior Court. She instead filed her claims directly in the DC Court of Appeals. The DC Court of Appeals denied her claims because she had failed to exhaust her administrative remedies and suggested she complete the exhaustion process. Plaintiff failed to respond to the Court's show cause order and her claims were dismissed. Ms. Owens could have sought further judicial review in the DC Superior Court and then appeal that court's decision to the DC Court of Appeals, but she again elected not to pursue that remedy.

Thus this Court must now review the administrative remedies she did pursue and ascertain whether they met the standards of the constitutional due process factors of *Mathews*. From the dates of her suspensions and her termination until the filing of this law suit, Ms. Owens took advantage of multiple levels of procedural due process and would have received several more had she not withdrawn from the appeals process by her own volition. She took advantage of procedural due process at a) the MPD level, with the Police Trial Board and subsequent review by the Chief of Police, b) the two OEA administrative judge reviews of her suspensions and termination, and c) OEA Board review. However, instead of proceeding through the administrative process, Ms. Owens elected to withdraw her appeal to the OEA Board and declined to further appeal to the DC Superior Court. These elective actions by Ms. Owens ultimately precluded the ability of the DC Court of Appeals to review her case on its full merits.

Through the appeals that Ms. Owens did elect to take, however, the District satisfied the requisite level of constitutional procedural due process under the *Mathews v. Eldridge* test. As to the first factor, Ms. Owens faced deprivation of her property interest in her job. She accordingly received several levels of administrative and judicial review to justify the termination, including full decisions by the MPD Police Trial Board, the Chief of Police, and two ALJ determinations, and partial review by the DC Court of Appeals. Second, the CMPA provided several levels of procedural safeguards, including administrative and judicial review. In addition to administrative review, "[a]lmost by definition, judicial review satisfies the second *Matthew's* [sic] factor." *McCormick*, 2012 WL at 8. Ms. Owens received both agency and judicial review, which supports the presumption that her constitutional due process was satisfied. Lastly, under the third factor, it would be overly burdensome for the District to develop a scheme to provide greater process than two levels of administrative review and two levels of judicial review in addition to the two levels of review within the MPD. While a federal court could review this

claim on a constitutional basis, it would burden the federal system to review decisions that have already been adjudicated multiple times at the administrative and state court levels with consistent outcomes.  Therefore, based on the administrative and judicial remedies in which Ms. Owens elected to partake, the CMPA satisfied constitutional due process requirements and Ms. Owens cannot have a successful claim under § 1983 for procedural due process violations. Accordingly, her § 1983 claim is dismissed.

IV.     **The CMPA and the lack of a private right to action under § 1981 precluded Ms. Owens's retaliation claim under 42 U.S.C. § 1981**

Similar to Ms. Owens's § 1983 claim, the Court lacks jurisdiction over Ms. Owens's § 1981 retaliation claim because it arose out of her employment, she chose to withdraw her administrative appeal, and the District provided her with sufficient due process.  Alternatively, even if Ms. Owens had a retaliation claim and did not receive adequate constitutional due process, § 1981 does not provide a private right of action, therefore preventing the Court from granting Ms. Owens relief.

a.     **The CMPA precludes federal court jurisdiction over Ms. Owens's § 1981 claim**

Parallel with the analysis for Ms. Owens's § 1983 claim, the Court lacks jurisdiction over Ms. Owens's § 1981 claim.  First, this claim arose solely out of her employment, given that Ms. Owens based her § 1981 claim on the procedure she received during her termination hearing. (Am. Compl. [12] ¶¶ 134-135.)  In her Amended Complaint, she stated that the District did not notify her about the administrative hearing and that the District "deliberately created false charges."[3]  (*Id.*)  Similar to her § 1983 claim, Ms. Owens's § 1981 claim arose out of the procedure, or lack thereof, she received during her termination, therefore making it an employment dispute that must be remedied exclusively under the CMPA.  Second, like her § 1983 claim, Ms. Owens's withdrawal from the administrative process demonstrated that she failed to exhaust her administrative remedies, thereby precluding the Court from having jurisdiction.  Finally, even though she did not exhaust all of her CMPA remedies, the levels of

---

[3] Ms. Owens faced a number of serious charges that were adjudicated in the OEA Administrative Judge's Initial Decision on November 21, 2007.  These charges included: "fraud in securing appointment or falsification of official reports and records," "willfully and knowingly making an untruthful statement," "willfully disobeying orders or insubordination," and "conduct unbecoming an officer."  Ex. 3 of Pls.' Mot. for Summ. J. [51-3] at 4-6.

review that she did receive serve as evidence that the District satisfied constitutional due process requirements.  Therefore, Ms. Owens's § 1981 claim will be dismissed.

### b. Ms. Owens lacks a claim under § 1981 because the statute does not provide for a private right of action

Even if the CMPA did not prevent the Court from having jurisdiction over Ms. Owens's § 1981 claim, Ms. Owens's claim will still be dismissed.  Given that 42 U.S.C. § 1981 created a right without a remedy, Ms. Owens lacked a viable claim for retaliation under this statute.  The District argued that Ms. Owens's claim should be dismissed based on Ms. Owens's failure to demonstrate municipal liability and that appointment rather than contract governed her position with the MPD.  (Memo. Supporting Def. Mot. for Reconsideration [91] at 3-6.)  More basic than either of these issues, however, is whether 42 U.S.C. § 1981 created a private right of action enabling Ms. Owens to sue state actors.

While 42 U.S.C. § 1981 does not explicitly create a remedy against state actors, the District of Columbia Circuit has not decided whether the statute implies a remedy.  *See Sledge v. D.C.*, 2012 U.S. Dist. Lexis 87812 (D.D.C. 2012); *Moonblatt v. D.C.*, 572 F. Supp. 2d 15 (D.D.C. 2008).  In 1989, the Supreme Court held that § 1981 does not, in itself, provide a remedy against state actors.  *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989).  Rather, 42 U.S.C. § 1983 provided the exclusive federal remedy for individuals to effectuate their civil rights claims against state actors.  *Id.* at 731.  The Civil Rights Act of 1991 amended § 1981, adding language about contracts and stating "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."  Civil Rights Act of 1991, 102 P.L. 166, 105 Stat. 1071 (1991).  It is unclear from the statutory language whether the Civil Rights Act of 1991 abrogated *Jett*'s holding to create a private cause of action under § 1981 or if it left *Jett*'s holding intact.

Of the seven circuits that considered this question, six concluded that Congress did not create an implied cause of action under § 1981.  *McGovern v. City of Phila.*, 554 F.3d 114, 120-121 (3rd Cir. 2009) (finding no private right against a state actor under § 1981 because "Congress neither explicitly created a remedy against state actors under § 1981(c), nor expressed its intent to overrule *Jett*"); *Arendale v. City of Memphis*, 519 F.3d 587, 598 (6th Cir. 2008) ("Having rejected Plaintiff's argument that § 1981(c) overrules *Jett*, this Court has no choice but to follow *Jett* as binding authority"); *Bolden v. City of Topeka*, 441 F.3d 1129, 1137 (10th Cir.

2006) ("We therefore conclude that even after the 1991 amendments to § 1981, damages claims against state actors for § 1981 violations must be brought under § 1983"); *Oden v. Oktibbeha Cnty.*, 246 F.3d 458, 464 (5th Cir. 2001) ("Because Congress neither expressed its intent to overrule *Jett*, nor explicitly created a remedy against state actors in addition to § 1983, we are not willing to deviate from the Supreme Court's analysis of § 1981 in *Jett*"); *Butts v. Cnty. of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000) ("Congress provided no indication that it contemplated creating a cause of action against state actors outside of § 1983…Accordingly, we conclude *Jett* still governs this case"); and *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 n.1 (4th Cir. 1995) ("We do not believe that this aspect of Jett was affected by the Civil Rights Act of 1991"); *contra Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996) ("[W]e conclude that the amended 42 U.S.C. § 1981 contains an implied cause of action against state actors, thereby overturning *Jett*'s holding that 42 U.S.C. § 1983 provides the exclusive federal remedy against state actors for the violation of rights under 42 U.S.C. § 1981.")

Based on the number of circuits in agreement, the Court declines to find that the Civil Rights Act of 1991 overturned the holding in *Jett* and created a private cause of action against state actors under § 1981.  Without a private right of action, § 1981 creates a right without a remedy for Ms. Owens.  Accordingly, the Court will dismiss Ms. Owens's § 1981 claim.

## <u>CONCLUSION</u>

The Court denies Ms. Owens's Motion for Reconsidering given that she does not present novel issues of law or fact.  The Court grants the District's Motion for Reconsideration and accordingly dismisses the Plaintiff's remaining claims under Counts 1, 3, 4, and 5 for jurisdictional reasons.  Therefore, with no claims remaining, the Court dismisses the case with prejudice.


DATE:__2/14/2013___                                    _____/s/_____

                                                                        ALAN KAY

                                                                        UNITED STATES MAGISTRATE JUDGE